*484 OPINION OF THE COURT
Leland DeGrasse, J.
Defendant Water Chef, Inc. moves, pursuant to CPLR 3212, for summary judgment dismissing the complaint and for summary judgment on its counterclaims. Plaintiff, Funding Group, Inc., opposes the motion.
Facts
In March 2003, plaintiff entered into a letter agreement with defendant pursuant to which plaintiff agreed to loan defendant $25,000 to be repaid within 45 days. The revised letter agreement, dated March 28, 2003, which was written on defendant’s business stationery and signed by David A. Conway, in his capacity as president and chief executive officer of defendant corporation, states as follows:
“Dear Norman:
“I enjoyed our conversation, and I am pleased to put in writing the details of the transaction we discussed. The Funding Group Inc. will lend to WaterChef, Inc., a Delaware corporation, the amount of US$25,000, for a period of forty-five days, with such amount to earn interest at the rate of 10% per month. WaterChef has agreed to pre-pay the 45 days interest, in the form of shares of convertible preferred stock, with the number of shares to be issued upon conversion, calculated at $0.05 per share, being 75,000 shares. As an incentive for you to undertake this transaction, without delay, you will receive additional shares of convertible preferred, convertible to 150,000 shares of WaterChef common.
“In addition, as security against the Company’s failure to repay the principal within four (4) business days of the loan coming due, the Company agrees to give you a call on additional shares of convertible preferred so as to yield at least 500,000 share[s] of common stock upon conversion. If the price of WaterChef common falls below $0.05 per share, the Company will issue additional shares of common so that the total number of shares issued, multiplied by the stock price, equals $25,000. As an officer of the Corporation, and Chairman of the Board of Directors, I have requested and received approval from the Board to make this representation to you. *485 Finally, in the event of repayment after the four business day grace period lapses, the Company will be required to issue an additional number of shares of convertible preferred so as to yield 600,000 shares of WaterChef common upon conversion. I will prepare and execute a Promissory Note in your favor, as you asked, and I will forward it to you upon the receipt of the funds.
“It is critical that the transaction close, and that the loan amount be wired to the Company’s account not later than March 31st, 2003.1 have enclosed the wire transfer instructions as an attachment. Once again, thank you for your prompt response, and for your interest in WaterChef.
“Sincerely,
“[signed]
“David A. Conway”
Plaintiff loaned the money to defendant on April 1, 2003, thereby rendering May 16, 2003 as the due date to repay the loan, and May 21, 2003 as the last date for defendant to repay the loan without triggering the security provision. After receiving the funds, Conway signed a promissory note guaranteeing repayment of the loan. When defendant failed to timely repay the loan, plaintiff commenced the instant action in July 2006. The complaint asserts three causes of action sounding in breach of contract, declaratory judgment, and unjust enrichment. The complaint alleges that defendant is
“liable to plaintiff for additional shares of convertible preferred stock so as to yield at least 500,000 shares of common stock based on a minimum stock price of $.05 per share, and three month’s worth of interest in the amount of $7,500, or the common stock equivalent, for the period May 16, 2003 through August 14, 2003.”
It is further alleged that “pursuant to defendant’s bylaws, all preferred stock earned a 15% dividend,” and that plaintiff “is entitled to a 15% dividend on the 2,250 shares of preferred stock issued to cover 45 days of prepaid interest.” It is also alleged that “certain stock certificates issued to plaintiff in lieu of cash payments bore a ‘restrictive’ legend impairing the marketability of same, in violation of the parties’ agreement,” and that plaintiff is entitled to a judgment directing defendant to issue unrestricted stock in the place and stead of all such restricted stock.
*486 In its answer, dated. October 11, 2006, defendant interposed four counterclaims sounding in criminal usury, rescission, unjust enrichment and declaratory judgment. Defendant now moves for summary judgment dismissing the complaint and for summary judgment on its counterclaims.
Discussion
Summary Judgment Standard
The law is well settled that summary judgment is a drastic remedy to be granted only when there is clearly no genuine issue of fact to be presented at trial (see Andre v Pomeroy, 35 NY2d 361 [1974]; Matter of Benincasa v Garrubbo, 141 AD2d 636 [1988]). “When reviewing a motion for summary judgment the focus of the court’s concern is issue finding, not issue determination, and the affidavits should be scrutinized carefully in the light most favorable to the party opposing the motion” (Robinson v Strong Mem. Hosp., 98 AD2d 976 [1983], quoting Gold-stein v County of Monroe, 77 AD2d 232, 236 [1980]). The burden on a motion for summary judgment rests initially upon the moving party to come forward with sufficient proof in admissible form to enable a court to determine that it is entitled to judgment as a matter of law (Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853 [1985]; Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 395, 404 [1957], rearg denied 3 NY2d 941 [1957]). Failure to make such prima facie showing requires a denial of the motion, regardless of the sufficiency of the opposing papers (Winegrad, 64 NY2d at 853). However, once a moving party has made a prima facie showing of its entitlement to summary judgment, “the burden shifts to the opposing party to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact which require a trial of the action” (Garnham & Han Real Estate Brokers v Oppenheimer, 148 AD2d 493, 494 [1989]; see also Zuckerman v City of New York, 49 NY2d 557, 562 [1980]).
Defendant first argues that it has repaid the $25,000 loan and “all illegal interest charged by plaintiff.” In support of its assertions, defendant submits copies of stock certificates, canceled checks, and an entry from defendant’s daily transaction journal evidencing that:
“On April 30, 2003, defendant issued two restrictive stock certificates to plaintiff: one for 2,250 shares of convertible preferred stock, representing the prepaid 10% monthly interest on the loan, and another for *487 4,500 shares of convertible preferred stock, representing the prepaid incentive fee.
“On July 23, 2003 and August 13, 2003, defendant repaid the $25,000 loan to plaintiff with two payments of $12,500 each.
“In July 2003, defendant issued a restrictive stock certificate to plaintiff for 18,000 shares of preferred stock, representing the late penalty fee.
“On August 1, 2006, defendant paid plaintiff the sum of $6,666.66, representing additional interest due on the loan.”
Defendant next argues that the letter agreement is criminally usurious and void ah initio as a matter of law because the transaction calls for the payment of interest at an annual rate which is in excess of the criminal usury rate of 25% under Penal Law § 190.40. Specifically, defendant contends that the letter agreement called for interest on the loan at the monthly rate of 10%, or 120% annually in the form of 2,250 shares of preferred stock, convertible to 75,000 shares of common stock valued at $3,750. In addition, the agreement called for the payment of an incentive fee in the form of 4,500 shares of preferred stock, convertible to 150,000 shares of common stock valued at $7,500 which amounted to an interest rate of 243% per annum. Lastly, defendant contends that the agreement provided for a late penalty fee charge in the form of 18,000 shares of preferred stock, convertible to 600,000 shares of common stock valued at $30,000 which amounted to 120% of the loan.
The current maximum annual interest rate under New York’s civil usury statute is 16% (General Obligations Law § 5-501 [1]; Banking Law § 14-a; Borowski v Falleder, 296 AD2d 301 [2002]), and 25% under New York’s criminal usury statute (Penal Law § 190.40; Nikezic v Balaz, 184 AD2d 684 [1992]). The laws defining and prohibiting usury are intended to protect against a lender’s overreaching (Norman Goldstein Assoc, v Bank of N.Y., 204 AD2d 288 [1994]). While pursuant to General Obligations Law § 5-521 (1) corporations, generally the antithesis of “desperately poor people,” are ordinarily barred from asserting a usury defense (Schneider v Phelps, 41 NY2d 238, 243 [1977]), the prohibition is inapplicable in an action in which a corporation, such as defendant, interposes the defense of criminal usury as described in section 190.40 of the Penal Law (see General Obligations Law § 5-521 [3]). Penal Law § 190.40 penalizes as a felony the knowing unauthorized loaning of any amount at an *488 interest rate greater than 25% per annum. General Obligations Law § 5-521 (3) permits corporations to interpose a defense of criminal usury as described in Penal Law § 190.40. A defendant raising the defense of criminal usury must allege and prove that the lender (1) knowingly charged, took or received (2) annual interest exceeding 25% (3) on a loan or forbearance (Penal Law § 190.40). The first element requires proof of the general intent to charge a rate in excess of the legal rate rather than the specific intent to violate the usury statute (Angelo v Brenner, 90 AD2d 131 [1982]). Where the usurious interest is plain from the face of the instrument, usurious intent will be implied (see Fareri v Rain’s Inti., 187 AD2d 481 [1992]).
Defendant has met its burden of proof simply by submitting the letter agreement evidencing the usurious transaction. Here, an interest rate of 10% per month (120% per annum) plus an incentive fee of $7,500 (243% of the loan) amount to combined interest payments at an annual interest rate of 363%. That amount exceeds the maximum rate allowed by the civil usury law (General Obligations Law §§ 5-501, 5-511 [1]), as well as the criminal usury law (Penal Law § 190.40). In addition, the late charge provision of the letter agreement, which awarded a 120% per annum penalty, “while not technically interest, is unreasonable and confiscatory in nature and therefore unenforceable when examined in the light of the public policy expressed in Penal Law § 190.40, which makes an interest charge of more than 25% per annum a criminal offense” (Sandra’s Jewel Box v 401 Hotel, 273 AD2d 1, 3 [2000]; see also BDO Seidman v Hirshberg, 93 NY2d 382 [1999]; Quaker Oats Co. v Reilly, 274 AD2d 565 [2000]). “The showing, as here, that the [letter agreement] reserves to the lender an illegal rate of interest satisfies [defendant’s] burden of proving a usurious loan” (Matter of Dane, 55 AD2d 224, 226 [1976]; see also Hammond v Marrano, 88 AD2d 758 [1982]). This evidence shifts the burden to plaintiff, requiring it to produce evidence negating the application of the usury defense.
In opposition, plaintiff argues that defendant should be estopped from asserting the defense of usury where “defendant’s own express conduct” induced plaintiff into making the loan, and where defendant “drew up the note — now in hindsight— complained of.” Plaintiff further argues that defendant cannot avail itself of a defense of criminal usury because the law of usury does not apply here where the transaction was in the nature of a joint venture. In support of plaintiff’s arguments, *489 plaintiffs principal, Norman Levine, avers in his affidavit that the personal conversations he had with defendant’s president, David Conway, belies the assumption that the transaction at issue was that of a borrower and a lender as ‘‘[p]laintiff was enticed by defendant into entering into the . . . transaction, with the promise of obtaining what was to be a valuable interest in an up and coming public company.” Levine further avers that “[i]t was David Conway, personally, that induced plaintiff into accepting stock in the company, in lieu of various cash payments,” and that “[djuring the course of ongoing negotiations, plaintiff was furnished with a list of up and coming ‘opportunities’ [that] defendant . . . would be involved in, as a further means of inducing plaintiff to ‘come on board’ with [defendant].”
The Court of Appeals has “recognized that a borrower may be estopped from interposing a usury defense when, through a special relationship with the lender, the borrower induces reliance on the legality of the transaction” (Seidel v 18 E. 17th St. Owners, 79 NY2d 735, 743 [1992]). The court emphasized, however, that “[a]n indispensable requisite of an estoppel in pais, is that the conduct or representation was intended to, and did, in fact, influence the other party to [its] injury” (id., quoting Payne v Burnham, 62 NY 69, 73 [1875]). The fact that the borrower suggests the interest rate, standing alone, does not relieve the lender of the usury defense (Pemper v Reifer, 264 AD2d 625 [1999]). Plaintiff has failed to prove that the parties shared a “special relationship” within the meaning of this exception to the usury defense. The plain reading of the letter agreement clearly indicates that the transaction was a loan. Moreover, the complaint alleges that the parties “entered into an agreement whereby plaintiff was to lend defendant the sum of $25,000”; that “said agreement provided for defendant’s prepayment of interest ... in the form of convertible preferred stock”; that
“on or about March 27, 2003, plaintiff advised defendant of several additional terms the parties needed to incorporate in the agreement, which included a signed promissory note for the $25,000.00, and an additional ‘incentive’ for the loan in the form of convertible preferred stock that would yield 150,000 shares of common stock upon conversion.”
Plaintiffs second contention is that the letter agreement between the parties contemplated a joint venture rather than a *490 loan subject to the defense of usury. Inasmuch as usury laws apply only to loans and forbearances, and not to investments (General Obligations Law § 5-501 [1], [2]), if the transaction is not a loan or forbearance of money there can be no usury, regardless of how unconscionable the contract may be (Donatelli v Sis-kind, 170 AD2d 433 [1991]).
“In order for a transaction to constitute a loan, there must be a borrower and a lender; and it must appear that the real purpose of the transaction was, on the one side, to lend money at usurious interest reserved in some form by the contract and, on the other side, to borrow upon the usurious terms dictated by the lender” (id. at 434).
Plaintiffs assertion that the acceptance of stock in the defendant company in lieu of cash payments constituted a joint venture is not supported by the language of the parties’ written agreement. Here, the clear language of the letter agreement fails to show certain key terms of a joint venture, i.e., “the sharing of profits and losses, joint control and management of the company, and contribution of capital” (Baytree Assoc. v Forster, 240 AD2d 305, 306 [1997], Iv denied 90 NY2d 810 [1997]). As such, the court finds that the transaction between the parties constituted a loan, and that the loan was made at a usurious rate of interest (cf. Leibovici v Rawicki, 57 Misc 2d 141 [1968] [where the funds were plainly treated as a joint investment]). Thus, defendant has established an adequate usury defense warranting the dismissal of the complaint.
Plaintiff, in opposition, has failed to demonstrate evidence sufficient to raise a triable issue of fact (see Zuckerman, 49 NY2d at 562). Plaintiffs contention that defendant’s deposition testimony will likely characterize the nature of the parties’ relationship as joint venturers is unavailing. Plaintiff has failed to establish the need for discovery to ascertain “facts essential to justify opposition” within defendant’s knowledge, which plaintiff would need to oppose the motion, so as to authorize the court to deny any relief or grant a continuance pending disclosure (CPLR 3212 [f|; see also Weltmann v RWP Group, 232 AD2d 550 [1996]; Aminov v East 50th St. Rest. Corp., 232 AD2d 592 [1996], Iv denied 89 NY2d 815 [1997]).
As to the branch of the motion by which defendant seeks summary judgment on its counterclaims for the recovery of “all illegal fees and penalties paid to plaintiff to finance the loan,” defendant argues that, pursuant to General Obligations Law §§ 5-501 and 5-511, the usurious loan must be declared void as a *491 matter of law. Defendant further argues that, pursuant to General Obligations Law § 5-513, it is entitled to recover any monies paid in excess of the legal rate of interest. In opposition, plaintiff argues that defendant may not avail itself of the provisions set forth in General Obligations Law § 5-513 as a means to recover an illegal overcharge of interest since that statute is predicated on civil usury, i.e., interest rates exceeding 16% but under 25%.
Defendant’s contention that this court must declare the loan void as a matter of law is without merit. There is no specific statutory authority for voiding a loan that violates the criminal usury statute. Although the Legislature authorized the pleading of criminal usury as a defense by a corporation (General Obligations Law § 5-521 [3]), it made no change in the provisions of General Obligations Law § 5-511 which declares a usurious loan “void” and orders “the same to be surrendered and cancelled.” As pointed out in dicta by the court in In re Venture Mortgage Fund, L.P. (282 F3d 185 [2002]), “§ 5-511 voids a loan that violates the civil usury statute (§ 5-501) but says nothing about a loan that violates the criminal usury statute. The criminal usury statute, by its terms, does not expressly void a loan that exceeds its maximum rate” (id. at 190 n 4). Defendant cites Fareri (187 AD2d at 482) for the proposition that the court must declare a criminally usurious loan void. However, Fareri simply relied on language from Szerdahelyi v Harris (110 AD2d 550 [1985]), which itself involved a loan that violated the civil usury statute only.
With respect to defendant’s contention that it is entitled to recover any monies paid in excess of the legal rate of interest, plaintiff purports to rely on General Obligations Law § 5-513 which provides that a borrower may recover the amount of money paid to the lender that is more than the legal interest. Contrary to defendant’s contention, the express language of General Obligations Law § 5-513 permits relief only of penalties incurred under the General Obligations Law. No reference is made therein to the remedy for a loan in violation of the criminal usury statute. Thus, “[t]he statutory exception for interest exceeding 25 percent per annum is strictly an affirmative defense to an action seeking repayment of a loan and may not, as attempted here, be employed as a means to effect recovery by the corporate borrower” (Intima-Eighteen, Inc. v Schreiber Co., 172 AD2d 456, 457-458 [1991] [citations omitted], Iv denied 78 NY2d 856 [1991]; see also Schneider v Phelps, 41 NY2d 238, 242-243 [1977]).
*492 With respect to defendant’s contention that it is entitled to recover costs and attorney’s fees necessitated as a result of plaintiffs frivolous conduct in commencing the instant merit-less action, 22 NYCRR 130-1.1 permits a court, in its sole discretion, to impose sanctions upon a party or an attorney who engages in “frivolous conduct.” Pursuant to 22 NYCRR 130-1.1 (c), conduct is frivolous if
“(1) it is completely without merit in law and cannot be supported by a reasonable argument for an extension, modification or reversal of existing law;
“(2) it is undertaken primarily to delay or prolong the resolution of the litigation, or to harass or maliciously injure another; or
“(3) it asserts material factual statements that are false.”
In the court’s discretion, plaintiffs conduct is not frivolous as defined by 22 NYCRR 130-1.1 (c).
Conclusion
Based on the foregoing, defendant’s motion is granted to the extent that the complaint is dismissed. With respect to the fourth counterclaim, it is adjudged and declared that the loan’s interest rate is usurious within the contemplation of Penal Law § 190.40. The remaining counterclaims are dismissed.