**MANFRA, TORDELLA & BROOKES, INC., Plaintiff-Appellee,**

v.

**Francisco BUNGE, Defendant-Appellant.**

No. 887 Docket 85–7986.

United States Court of Appeals, Second Circuit.

Argued March 5, 1986.

Decided June 26, 1986.

Joseph DiBenedetto, New York City (David W. Shapiro, Cole & Deitz, New York City, of counsel), for plaintiff-appellee.

Gelacio M. Cordero, New York City (Stebbings & Skydell, P.C., New York City, of counsel), for defendant-appellant.

Before FEINBERG, Chief Judge, and NEWMAN and WINTER, Circuit Judges.

WINTER, Circuit Judge:

Francisco Bunge appeals from Judge Duffy's decision, after a two-day bench trial, awarding plaintiff Manfra, Tordella & Brookes, Inc. ("MTB") $776,222.68—the un-

paid balance of a promissory note given by Bunge—plus costs and disbursements. The district court rejected Bunge's defenses of usury, duress, and unconscionability, and dismissed his counterclaim based on fraud or negligent misrepresentation. For the reasons stated below, we affirm.

1. *The MTB Action Against Bunge*

MTB is a New York corporation licensed under Article XIII of the Banking Law of New York State. Bunge, a citizen of Argentina, established an account at MTB called the "Bugafra" account through which to effectuate purchases and sales of gold. The account agreement called for Bunge to pay for purchases immediately upon receipt of confirmation. However, Bunge failed to make timely payment and as a result became indebted to MTB.

Bunge's monthly statements reflected his indebtedness as well as interest and service charges. During 1981, MTB charged the following amounts on the unpaid balances of the Bugafra account:

| Period Ended | Amount Per Annum |
|---|---|
| January 30, 1981 | 25% |
| February 27, 1981 | 24% |
| March 31, 1981 | 24% |
| April 30, 1981 | 24% |
| May 29, 1981 | 27% |
| June 30, 1981 | 26% |
| July 31, 1981 | 26% |
| August 31, 1981 | 26% |
| September 30, 1981 | 25% |
| October 30, 1981 | 22% |

On December 18, 1981, after Bunge had failed to pay off his debt and made numerous requests for additional time to pay, MTB agreed to consolidate the debt into a seven-month promissory note (the "Note"). Bunge made the following payments on the Note, which was in the amount of $762,-258.95, and which was to bear interest at the rate of eighteen percent per annum:

| | |
|---|---|
| January 5, 1982 ... | $100,000 |
| February 5, 1982 .. | $100,000 |
| March 11, 1982.... | $ 50,000 |
| June 18, 1982 ..... | $ 51,000 |

The June, 1982, payment was the last one made by Bunge prior to the initiation of this action.

On May 13, 1983, MTB brought suit in the Southern District for payment on the Note.[1] It alleged that Bunge had paid only $200,000 on the Note, and demanded the unpaid balance plus interest.

Bunge contends that during the period January 1, 1981, through October 20, 1981, the legal rate of interest in New York was sixteen percent, and that therefore the interest charged by MTB on the Bugafra account was usurious. Further, he contends that in certain months, the rate charged exceeded twenty-five percent and constituted criminal usury.[2]

 The defense of usury is not available to Bunge under New York law. New York General Obligation Law § 5–501 (McKinney 1978), prohibits the charging of usurious rates of interest on "the loan or forbearance of any money...." To understate the matter considerably, the New York courts, no doubt aware of the state's position as a commercial center, have construed the terms "loan" and "forbearance" narrowly. For example, in *GTP Leisure Products, Inc. v. Cannella*, 58 A.D.2d 1040, 397 N.Y.S.2d 292 (App.Div.1977), a unanimous appellate division upheld summary judgment for a supplier of televisions who sought to recover the purchase price plus interest of goods sold on open account, despite the defendant's claim of usury. The court stated, "[T]his credit transaction was neither a 'loan' nor a 'forbearance' within the meaning of Section 5–501.... The charges imposed upon past due accounts were not interest charges, but service charges 'for the privilege of purchasing on credit.'" (citations omitted). *Id.* at 1041, 397 N.Y.S.2d at 293. *See also Rumi-*

---

1. The complaint sought judgment against both Bunge and his brother Ricardo, who has since been stipulated out of the case.

2. Bunge also asserted the affirmative defenses of duress and unconscionability. The district court rejected these defenses, and Bunge does not appeal from that portion of its decision.

*nant Nitrogen Products v. Zittel,* 78 A.D.2d 766, 766–67, 433 N.Y.S.2d 644, 646 (App.Div.1980) (commercial buying credit arrangement exempt from usury limitations as "time price differential"). Because the money owed by Bunge to MTB was due to losses on purchases of gold on an open credit account, it was neither a loan nor a forbearance as defined by New York courts interpreting Section 5–501. Therefore, the usury laws do not apply.[3]

## 2. The Counterclaim

Bunge's counterclaim against MTB arose out of his purchase of an 80% interest in Esterlina, S.A., an Argentine exchange company at which Bunge began working in September, 1981. He became Vice President of Esterlina on October 7, 1981, at about which time he began negotiating to buy 80% of Esterlina's stock from Josefina Leloir. Bunge contracted to buy these shares in November, 1981. In return for the shares, Bunge claims to have paid Leloir sums that were supposed to be used to pay certain creditors of Leloir and to pay off the debit balances in two of her accounts, one of which was the "Matra" account at MTB. If Bunge in fact made such payments to Leloir, Leloir appears not to have used the money to pay off the Matra account.

Esterlina's chief asset was an account at MTB called the "Esterlina" account. Bunge testified that on November 3 or 4, 1981, certain MTB officials confirmed to him that the Esterlina account had a cash balance of about $800,000 unencumbered by any claims or guarantees. However, in October, 1982, MTB applied the credit balance of the Esterlina account against the debit balance of the Matra account. This left the Esterlina account with a zero balance, and, as a result, the Central Bank of Argentina instituted bankruptcy proceedings against Esterlina. Bunge contends that if the Esterlina and Matra accounts were cross-guaranteed, MTB deliberately and fraudulently withheld this information from him so as to induce him to purchase the Esterlina shares from Leloir and thus to expose him to losses resulting from Esterlina's liability for the debit balances of the Matra account.[4]

Bunge testified, credibly in Judge Duffy's view, that during the course of his negotiations to purchase the Esterlina stock, he spoke with MTB employees on several occasions and was assured that the Esterlina account was not encumbered by any guarantee. These MTB employees knew that Bunge was negotiating the purchase of the Esterlina stock at that time, and confirmed to him that Matra was Leloir's personal account. Moreover, the Esterlina account statements did not mention any connection with the Matra account.

Judge Duffy found that Bunge had pleaded a plausible fraud claim, but rejected the counterclaim due to his failure to prove damages. Bunge testified that he paid "[m]ore or less approximately $1 million" for the Esterlina shares, but was unable to support this contention with any documentation whatsoever. Although Judge Duffy believed most of Bunge's testimony, he evidently disbelieved this portion of it. In view of the absence of any documentary confirmation of a transfer of

---

3. In addition, the usury laws do not apply to defaulted obligations. *See American Express Co. v. Brown,* 392 F.Supp. 235, 238 (S.D.N.Y. 1975); *Bloom v. Trepmal Construction Corp.,* 29 A.D.2d 951, 289 N.Y.S.2d 447, *aff'd,* 23 N.Y.2d 730, 244 N.E.2d 62, 296 N.Y.S.2d 372 (1968). Because interest was charged only on Bunge's past due debts, the usury laws do not apply.

Nor did MTB charge impermissible "compound interest." The very case cited by Bunge as proscribing compound interest, *Household Finance Corp. v. Goldring,* 263 App.Div. 524, 527, 33 N.Y.S.2d 514, 517, *aff'd,* 289 N.Y. 574, 43 N.E.2d 715 (1942), held that there is no compound interest "where interest has already fallen due and has become a debt which, like any other debt, may either be paid in cash or reloaned to the debtor under a new agreement that it shall bear interest."

4. At trial, Bunge also asserted a claim of negligent misrepresentation. The district court rejected this claim, and Bunge has abandoned it on appeal.

such a large sum, Judge Duffy's conclusion was hardly clearly erroneous.

■ Under New York law, plaintiffs in a fraud action may recover only their "out of pocket" losses, not the lost "benefit of the bargain." *Reno v. Bull,* 226 N.Y. 546, 552–54, 124 N.E. 144, 146 (1919); *Cayuga Harvester, Inc. v. Allis-Chalmers Corp.,* 95 A.D.2d 5, 22–23 & n. 8, 465 N.Y.S.2d 606, 618 & n. 8 (App.Div.1983); *DiRose v. PK Management Corp.,* 691 F.2d 628, 631 (2d Cir.1982), *cert. denied,* 461 U.S. 915, 103 S.Ct. 1896, 77 L.Ed.2d 285 (1983). The measure of Bunge's damages is the difference between what he paid for the Esterlina stock and its true value at the time of purchase in light of the fact that the Esterlina account was encumbered. At the very least, Bunge failed to prove the first element. He thus may have paid a trifling sum for the stock, in which case his damages would be at best limited to that sum. Proof of the size of the Esterlina account at the time he purchased Leloir's shares, about $800,000, would not suffice to prove damages under New York law because it establishes only the ceiling on Bunge's damage claim. Absent proof of the purchase price, we simply cannot know how much he is "out of pocket," which may be considerably less than 80% of $800,000.

■ In addition, Bunge claimed that the freezing of the Esterlina account damaged him because it prevented him from paying the Note, which was the subject of MTB's action against him. However, the district court found that Bunge failed to carry his burden of establishing the damages to him resulting from MTB's freezing of the Esterlina account. The court noted that Esterlina may have a cause of action against MTB arising out of the freezing of the Esterlina account, and we note that Esterlina is currently pursuing that claim in state court. However, that claim belongs to the corporation and does not provide a basis for Bunge, a shareholder, to recover from MTB.

The judgment of the district court is affirmed.