**HILLAIR CAPITAL INVESTMENTS, L.P., Plaintiff,**

v.

**INTEGRATED FREIGHT CORPORATION, Smith Systems Transport, Inc., Morris Transport, Inc., Cross Creek Trucking, Inc., Paul Henley, Henry P. Hoffman and Matthew A. Veal, Defendants.**

No. 12 Civ. 7164 AKH.

United States District Court, S.D. New York.

Aug. 28, 2013.

Jordan Danforth Wolff, Ted Poretz, Bingham McCutchen LLP, New York, NY, for Plaintiff.

Thomas Donald Atkinson, Ledwith & Atkinson, Attorneys, Lynbrook, NY, for Defendants.

### ORDER GRANTING DEFENDANTS' LEAVE TO AMEND ANSWER AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

ALVIN K. HELLERSTEIN, District Judge.

This case involves a hedge fund seeking to recover the money it lent to a financially struggling trucking company. That com-

pany acknowledges it has failed to pay back two loans, but asserts that the loans were invalid because they were usurious.

### Background

In the fall of 2011, Plaintiff, a hedge fund, made two separate loans to Integrated Freight Systems ("IFC"), a freight and trucking company. The first, an "Original Issue Discount Senior Secured Convertible Debenture," was issued on September 26, 2011 (the "September loan"). Under the terms of the debenture, Plaintiff provided a loan of $165,000, which had to be repaid in the amount of $178,200 by April 1, 2012. On November 4, 2011, Plaintiff issued a second debenture to IFC under which Plaintiff loaned $149,500 to IFC and IFC had to repay $161,460, also by April 1, 2012 (the "November loan"). Each loan required IFC "to reimburse [Plaintiff] the non-accountable sum of $15,000 for its legal fees and expenses...." Pl. Ex. 3, 5 at § 5.2. The loans were guaranteed by Smith Systems Transport, Morris Transport, and Cross Creek Trucking, IPC's subsidiaries. Pl. Ex. 7, 8. In addition, the presidents of those subsidiaries, Paul Henley, Henry Hoffman, and Matthew Veal, personally guaranteed the November loan, and Henley also guaranteed the September loan. Pl. Ex. 9, 10,

As part of the loan deal, IFC agreed to issue shares of its common stock to Plaintiff. IFC issued to Plaintiff 500,000 shares for the September loan, and an additional 453,030 shares for the November loan. Pl. Ex. 3, 5 at § 2.2. The shares, however, had not been registered under the Securities Act of 1933, and therefore could not be transferred until six months had passed. *See* Pl. Ex. A; SEC Rule 144. At the time the September loan was issued, the closing price of IFC shares was 11 cents a share. The closing price dropped to 8 cents a share on the day the November loan was issued, Def. Ex. D. By the time the six-month holding period had expired, the share price had dropped even further; shares closed at 2 cents a share on March 26, 2012 (six months after the September loan) and at a penny a share on May 4, 2012 (six months after the November loan).

■ Three other provisions of the loan are relevant:

• The debentures indicated that in the event of default, the principal would become due immediately, and Defendants would have to pay the "Mandatory Default Amount," defined as "the sum of 130% of the outstanding principal amount of this Debenture, plus all other amounts, costs, expenses and liquidated damages due in respect of this Debenture." Pl. Ex. 4, 6 at §§ 1, 6(b).

• The agreements contained a variation of what is commonly called a "usury savings clause" or a "usury avoidance clause," which provided: "the total liability of [IFC] under the Transaction Documents for payments in the nature of interest shall not exceed the maximum lawful rate authorized under applicable law...."). Pl. 3, 5 at § 5.17.[1]

---

1. Under New York law, the "usury avoidance clause" does not, by itself, save an agreement from a charge of usury, *See Simsbury Fund, Inc. v. New St. Louis Assocs.*, 204 A.D.2d 182, 182, 611 N.Y.S.2d 557 (1994) ("[L]anguage therein purporting to reduce the interest rate to the legal rate in the event of a finding of usury, do not make the subject agreements nonusurious."); *DeStaso v. Bottiglieri*, 25 Misc.3d 1213(A), 901 N.Y.S.2d 905, 2009 WL 3298090 (Sup.Ct.2009). *See also Roswell Capital Partners LLC v. Alt. Const. Techs.*, 08 Civ. 10647, 2009 WL 222348, at *15 n. 13 (S.D.N.Y. Jan. 30, 2009); *Fed. Home Loan Mortg. Corp. v. 333 Neptune Ave. Ltd. P'ship*, 92 Civ. 5083, 1999 WL 390837, at *2–3

- The agreements indicated that they were to be governed by New York law. Pl. Ex, 3, 5 at § 5.9.

IFC failed to pay the loans when they came due in April 2012, and the guarantors did not honor their guarantees. Plaintiff filed suit on September 24, 2012. Defendants answered on January 4, 2013. Before discovery began, Plaintiff moved for summary judgment on May 6, 2013. Defendants cross-moved to amend their answer to assert the defense of usury.

**Discussion**

 Under Federal Rule of Civil Procedure 15(a)(2), courts "should freely give leave [to amend] when justice so requires." Leave to amend an answer "should not be denied unless there is evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility." *Milanese v. Rust–Oleum Corp.*, 244 F.3d 104, 110 (2d Cir.2001). Here, at this early stage of the case, there is no concern about delay, bad faith, or prejudice. The critical issue is whether the usury defense would be futile.

 Under New York Law, a rate is criminally usurious if the lender knowingly makes a loan at an annual rate of interest of more than 25 percent. N.Y. Penal Law § 190.40. "[C]orporations, generally the antithesis of 'desperately poor people,' are ordinarily barred from asserting a usury defense." *Funding Grp., Inc. v. Water Chef, Inc.*, 19 Misc.3d 483, 852 N.Y.S.2d 736, 740 (Sup.Ct.2008). Nevertheless, the criminal usury statute, unlike the civil statute barring loans of interest exceeding 16 percent, does apply to loans made to corporations, N.Y. Gen. Oblig. Law § 5–521(3).[2] Moreover, it is appropriate to consider usury law here given that the two

loans were personally guaranteed by IFC executives. "Usury is an affirmative defense and a heavy burden rests upon the party seeking to impeach a transaction for usury." *Gandy Mach., Inc. v. Pogue*, 106 A.D.2d 684, 685, 483 N.Y.S.2d 744 (N.Y.App.Div.1984) (citations omitted).

I find that Defendants have shown potential merit to their usury defense, and I therefore allow Defendants to amend their answer and deny Plaintiff's motion for summary judgment.

 On their face, the two loans had an interest rate of approximately 16%. However, Defendants assert that the principal amount of the loans was artificially inflated, and when the principal amount is correctly calculated, the interest rate on the loans is shown to be usurious, Defendants first contend that the $15,000 in fees they paid to Plaintiff for each loan should be taken into account when calculating the interest rate. "[A] borrower may pay reasonable expenses attendant on a loan without rendering the loan usurious." *Lloyd Corp. v. Henchar, Inc.*, 80 N.Y.2d 124, 127, 589 N.Y.S.2d 396, 603 N.E.2d 246 (1992). Reasonable expenses can include payments for attorneys' fees associated with the loan. *Durante Bros. & Sons, Inc. v. Flushing Nat. Bank*, 652 F.Supp. 101, 105 (E.D.N.Y. 1986). However, when fee payments do not actually reimburse lenders for expenses associated with the loan, and instead are a disguised loan payment, then such fee expenses can be considered in determining the interest rate. *See Lloyd Corp.*, 80 N.Y.2d at 127, 589 N.Y.S.2d 396, 603 N.E.2d 246 (acknowledging that fees can sometimes be "a pretext for higher interest"); *Brown v. Robinson*, 224 N.Y.

(E.D.N.Y. Apr. 15, 1999) *vacated on other grounds*, 201 F.3d 431 (2d Cir.1999). However, the clause may be relevant to the issue of intent.

2. Because civil usury does not apply to corporations, Defendants cannot claim civil usury as a defense.

301, 314, 120 N.E. 694 (1918); 72 N.Y. Jur.2d Interest and Usury § 107. The question of the purpose of the fee payment therefore presents an issue of fact.

■ Second, Defendants claim that the interest rates on the loans are higher than they appear because the stock transactions helped disguise the true value of the loans. Defendants are correct that the stock payment should be taken into consideration in determining the interest rate. Defendants effectively undertook four transactions: they took out two loans, and they also twice sold stock to Plaintiff. The value of the sold stock therefore is critical to calculating the initial loan amount and thus the interest rate. *See Sabella v. Scantek Med., Inc.*, 08 Civ. 453, 2009 WL 3233703, at *17–22 (S.D.N.Y. Sept. 25, 2009) (holding that the value of common stock given to the lender should be taken into account when determining the loan's interest rate). However, the fact that the stock was restricted, as well as whether the parties intended a usurious interest rate, must also be taken into account. *See* Rev, Rul. 77–287, 1977–2 C.B. 319 (1977) (outlining IRS's various methods for valuing restricted stock and noting that "restricted securities *generally* are issued at a discount from the market value of freely tradeable securities") (emphasis in original); *see also Phlo Corp. v. Stevens*, 00 Civ. 3619, 2001 WL 1313387, at *4 (S.D.N.Y. Oct. 25, 2001) *aff'd*, 62 Fed.Appx. 377 (2d Cir.2003) (holding that where there is only a possibility that the interest rate could exceed 25%, "the note is usurious only if both parties specifically intend for interest to be paid at a rate above the legal rate"). Because it is possible that the interest rate on the loans could exceed 25% once the stock transactions are taken into account, Defendants are entitled to present the defense of usury.[3]

■ Third, Defendants contend that the default provision—imposing a 30% increase in the principal, an increase in the interest rate, and other costs—should be considered in evaluating whether the interest rate is usurious. However, default payments are separate and distinct from the actual interest rate and therefore are not relevant in determining if the rate is usurious. *See Manfra, Tordella & Brookes, Inc. v. Bunge*, 794 F.2d 61, 63 n. 3 (2d Cir.1986) ("[U]sury law does not apply to defaulted obligations. Because interest was charged only on [defendant]'s past due debts, the usury laws do not apply."); *Roswell Capital Partners LLC v. Alt. Const. Techs.*, 08 Civ. 10647, 2009 WL 222348, at *16 (S.D.N.Y. Jan. 30, 2009) ("[T]here cannot be a finding of usury based on an interest rate that occurs in a situation of default."). Nevertheless, the issue of the reasonableness of the penalty provision is a separate defense that Defendants may assert.

## Conclusion

For the foregoing reasons, Defendants' motion to amend the complaint to assert

---

**3.** Defendants contend that if the loan is usurious, the entire transaction is void, and Plaintiff cannot recover any funds. *See Blue Wolf Capital Fund II, L.P. v. Am. Stevedoring Inc.*, 105 A.D.3d 178, 184, 961 N.Y.S.2d 86 (N.Y.App.Div.2013) ("Since [the defendant] has successfully asserted criminal usury as an affirmative defense, the loan transaction and the associated note, loan agreement, and collateral agreement are void and unenforceable."). I need not decide this issue now. But even if this were correct, Plaintiff may be able to recover on a theory of unjust enrichment, which can be available even if Plaintiff had unclean hands. *Chirra v. Bommareddy*, 22 A.D.3d 223, 224, 802 N.Y.S.2d 118 (N.Y.App. Div.2005) ("Nor are the unjust enrichment claims barred by the illegality doctrine or the doctrine of unclean hands, since the court must consider the relative culpability, bargaining power and knowledge of the parties.").

the defense of criminal usury is granted. Plaintiff's motion for summary judgment is denied, with leave to renew. The parties shall appear before me for a conference in Courtroom 14D on September 13, 2013, at 10 a.m. to discuss a plan for discovery.

The Clerk shall mark the motions (Doc. Nos. 15 and 20) terminated.

SO ORDERED.

