VICTOR MARRERO, United States District Judge.
On February 21, 2017, Plaintiff Adar Bays, LLC ("Adar Bays" or "Plaintiff")
*700 commenced this action against Aim Exploration, Inc. ("Aim Exploration" or "Defendant") alleging breach of contract and unjust enrichment. ("Complaint," Dkt. No. 1; "First Amended Complaint," Dkt. No. 11.)
On August 25, 2017, Aim Exploration moved for a judgment on the pleadings and to dismiss Plaintiff's First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(c). ("Motion," Dkt. Nos. 27, 31.) For the reasons stated below, the Motion is DENIED.
I. BACKGROUND
The contracts at issue in the case are an 8% convertible redeemable note ("Note," Dkt. No. 11, Ex. B) and a securities purchase agreement ("SPA"). The Note and the SPA, both dated November 6, 2014, provided for a principal amount of $45,000, a per annum interest rate of 8%, and a maturation date of November 6, 2015, and also granted Adar Bays a right to convert portions of the Note's principal and accrued interest into shares of Aim Exploration's common stock. (See Dkt. No. 11, Exs. A & B.) Specifically, Adar Bays was entitled,
at its option, at any time ... to convert all or any amount of the principal face amount of this Note then outstanding into shares of [Aim Exploration's] common stock (the "Common Stock") ... at a price ("Conversion Price") for each share of Common Stock equal to 55% of the lowest trading price of the Common Stock ... for the fifteen prior trading days including the day upon which a Notice of Conversion is received.
(Note ¶ 4(a)(emphasis in original).)
Relatedly, the Note also required Aim Exploration to reserve on account of Plaintiff 1,168,000 shares of the company's common stock for conversion under the Note. (See id. ¶ 12 (Aim Exploration "shall issue irrevocable transfer agent instructions reserving 1,168,000 shares of its Common Stock for conversions under this Note (the 'Share Reserve').").)
In case of certain "Events of Default," the Note provided for a default interest rate of 24% per annum as well as various penalties. (See id. ¶ 8.) For example, the Note provided for a $250 and $500 daily penalty if Aim Exploration failed to deliver stock to Adar Bays pursuant to the conversion feature of the Note, and purported to increase the outstanding principal amounts due under the Note by various percentages in the event of other breaches by Aim Exploration. (See id. )
On June 30 2015, Aim Exploration issued a partial redemption against the value of $11,250 to Adar Bays. (First Amended Complaint ¶ 14.) In January and February 2016, Aim Exploration validly effectuated four conversions for the value of $21,000. (Id. ¶ 15.) However, on December 21, 2016, Adar Bays submitted a notice of conversion for $12,750 of the principal amount of the Note to be converted into 8,831,943 shares of Aim Exploration stock, and Aim Exploration failed to deliver the shares. (Id. ¶¶ 16, 23.) On January 3, 2017, the parties entered into an agreement whereby Aim Exploration could redeem the Note by paying $50,000 prior to 4:00 p.m. on January 6, 2017. (Id. ¶¶ 17-19.) Aim Exploration failed to make the payment. (Id. ¶ 20.)
On April 6, 2017, Adar Bays filed the First Amended Complaint alleging breach of the Note and SPA contracts and unjust enrichment. (Dkt. No. 11.) In its Answer, Aim Exploration asserted, among other affirmative defenses, that the Note was unenforceable because Plaintiff charged a criminally usurious rate of interest. (Dkt. No. 22 ¶ 67.)
In its Motion, Aim Exploration moves for a judgment on the pleadings and to *701 dismiss Plaintiff's First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(c) because: (1) the conversion discount value of 45% is interest to be included in a usury analysis and violates New York usury laws; (2) the value of the reservation of shares reserved to Adar Bays at the time of the loans is interest under New York law and violates New York usury law; (3) the default rates of interest charged at the time the loans were made violate New York usury laws; (4) usurious intent is clear from the four corners of the Note; (5) the loan is void because it is criminally usurious; and (6) no equitable relief can be granted for usurious transactions. (See generally Defendant's Memorandum of Law in Support of Motion to Dismiss ("Def. Mem."), Dkt. No. 31.)
In opposition, Adar Bays argues: (1) the discounted price to acquire stock is not interest; (2) the share reserve is not interest; (3) the post-default interest rate is irrelevant to the usury determination; (4) Aim Exploration cannot prove the intent necessary for a finding of usury; and (5) even if the court were to find provisions of the contracts usurious, the loans should be adjusted, rather than voided. (See generally Plaintiff's Opposition to Defendant's Motion to Dismiss ("Pl. Opposition"), Dkt. No. 32.)
II. DISCUSSION
A. STANDARD OF REVIEW
Federal Rule of Civil Procedure 12(c) permits a party to "move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Disposition of a litigation on the pleadings 'is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings.' " Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Americas, No. 04-cv-10014, 2005 WL 1950116, at *3 (S.D.N.Y. Aug. 12, 2005) (quoting Sellers v. M.C. Floor Crafters Inc., 842 F.2d 639, 642 (2d Cir. 1988) ). "The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim." Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006). A complaint should be dismissed if the plaintiff has not offered sufficient factual allegations that render the claim facially plausible. See Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). The complaint should not be dismissed if the factual allegations "raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "The granting of a motion for judgment on the pleadings is appropriate only if, with all reasonable inferences drawn in favor of the non-moving party, the non-moving party has failed to allege facts that would give rise to a plausible claim or defense." Prowley v. Hemar Ins. Corp. of Am., No. 05-CV-981, 2010 WL 1848222, at *3 (S.D.N.Y. May 7, 2010).
B. APPLICATION
Under New York law, a loan is criminally usurious when the lender "charges ... as interest on the loan ... a rate exceeding twenty-five per centum per annum or the equivalent rate for a longer or shorter period." N.Y. Penal Law § 190.40 ; see also Scantek Med., Inc., v. Sabella, 582 F.Supp.2d 472, 474 (S.D.N.Y. 2008). "Usury is an affirmative defense and a heavy burden rests upon the party seeking to impeach a transaction for usury." Hillair Capital Investments, L.P. v. Integrated Freight Corp., 963 F.Supp.2d 336, 339 (S.D.N.Y. 2013) (citing Gandy Mach., Inc., v. Pogue, 106 A.D.2d 684, 483 N.Y.S.2d 744, 745 (3d Dep't 1984) ).
*702 1. Conversion Discount
Aim Exploration argues that Adar Bays "reserved" to itself a 45% discount as to the market price of Aim Exploration's stock, which guaranteed that Adar Bays would always receive 45% more on each dollar that it converted into stock under the Note. (See Def. Mem. at 10-13.) According to Aim Exploration, the Court therefore must include the 45% discount rate in its interest computations. (See id.)
As Adar Bays points out in its brief, this exact question-whether an option to convert stock at a discount is included in a usury calculation-has been addressed in two recent decisions by courts in this District. In a case involving a contract with provisions substantially similar to those at issue here, the Court considered a criminal usury defense involving a note with an 8% interest rate on a $75,000 loan and an option on the part of the lender to convert any or all of the borrower's common stock at 58% of the lowest trading price within thirteen days prior to receipt of the notice. See Union Capital LLC v. Vape Holdings Inc., No. 16-cv-1343, 2017 WL 1406278, at *1 (S.D.N.Y. Mar. 31, 2017). In response to the borrower's argument that the Court consider the 42% conversion discount in calculating the effective interest rate, the Court disagreed and concluded that:
[Lender] simply held an option to convert shares, and it could have elected to obtain repayment in cash, which would clearly not have been usurious. Moreover, even if [lender] chose to convert the loan principal into shares, any potential profit [lender] might realize would still be dependent on the market price at the time of conversion and so, therefore, would be too uncertain to incorporate into an interest rate calculation." See Phlo Corp. v. Stevens, 00-cv-3619 (DC), 2001 WL 1313387, at *5 (S.D.N.Y. Oct. 25, 2001) ("[I]t was not clear that any effective interest rate in excess of 25% would ever have to be paid, as the value of the warrants was uncertain.").
Id. at *5.
It could be argued that any potential profit a lender might realize from such an arrangement would not necessarily be dependent on the market price of the borrower's stock at the time of conversion because the percentage discount is always the same. Assuming full liquidity and immediate disposition, the profit realized from the purchase of stock at a fixed percentage discount at a fixed overall purchase price should generally be the same regardless of the undiscounted price of the stock. However, stock is not necessarily fully liquid and it cannot always be disposed immediately. According to Adar Bays, there are numerous circumstances under which it could realize no profit from the conversion discount. (See Pl. Opposition at 9.)
For example,
in order for Plaintiff to convert and sell the stock pursuant to the Note[ ], Securities and Exchange Commission ('SEC') regulations require ... that Defendant is current with its SEC filings. Therefore, if at any point, Defendant became delinquent in said filings, the conversion right became valueless until Defendant becomes current again.
(Id. ) Additionally, Adar Bays argues, there is no guarantee that it could realize a fixed profit by reselling the stock since it is possible that the price of the stock would decrease immediately following submission of a notice of conversion. (Id.; see also id. at 16 (describing various circumstances under which Adar Bays could realize no value from the conversion right, including that "Defendant could become delinquent in its filings, become delisted, experience sudden decreases in its stock price, experience no demand for its stock, or simply cancel the *703 reserve or refuse a conversion").) In sum, drawing all reasonable inferences in favor of the non-moving party, Adar Bays has at minimum stated a plausible claim that a right to convert loan principal into shares, even at a fixed percentage discount, is materially more uncertain than a right to receive cash and therefore should not be considered as interest in a usury calculation.
Similarly, Beaufort Capital Partners LLC v. Oxysure Sys., Inc. examined notes that had an equity conversion feature, which provided that at any time after the maturity date of the notes, interest and principal could be convertible into shares at the higher of (1) $.0004 or (2) the amount that is a 3 0% discount from the average closing price. No. 16-CV-5176, 2017 WL 913791, at *3 (S.D.N.Y. Mar. 7, 2017). In Beaufort, the Court held that the usury defense failed for the separate reason that the defense of usury does not apply to post-maturity interest rates. However, the Court noted that even focusing on the post-maturity interest rate, "the usury defense would likely nonetheless fail because it relies on the debt-to-equity conversion feature of the notes." Id. The Court reasoned that "though the initial transaction took the form of a loan, upon conversion to equity, the loans likely have the character of an equity investment, and are thus no longer vulnerable to a usury defense." Id. Thus, the Court concluded that defendant's reliance on the discounted equity conversion in determining the applicable interest rate in connection with its usury defense was misplaced. See id. In the case at hand, the Court is therefore persuaded that, drawing all inferences in favor of the non-movant, the value of the conversion discount is too uncertain to include as interest in a usury calculation.
2. Reservation of Shares
Aim Exploration also argues that the Note is criminally usurious because it reserved 1,168,000 shares of stock at the time the loan was made. (Def. Mem. at 13.) As support, Aim Exploration cites New York General Obligations Law § 5-511, which states that "[a]ll ... notes ... whereupon or whereby there shall be reserved or taken, or secured or agreed to be reserved or taken, any greater sum, or greater value, for the loan or forbearance of any money, goods or other things in action, than is prescribed in section 5-501, shall be void." N.Y. Gen. Oblig. Law § 5-511. Section 5-501 is New York's civil usury statute, which prohibits a lender from collecting on a loan with interest payment exceeding 16% per annum. N.Y. Gen. Oblig. Law § 5-501 ; Sabella v. Scantek Med., Inc., No. 08-cv-453, 2009 WL 3233703, at *16 (S.D.N.Y. Sept. 25, 2009).
According to Aim Exploration, the plain meaning of § 5-511 prohibits the actions taken by Adar Bays in ¶ 12 of the Note, which states:
The Company shall issue irrevocable transfer agent instructions reserving 1,168,000 shares of its Common Stock for conversions under this Note (the "Share Reserve"). The reserve shall be replenished as needed to allow for conversions of this Note. Upon full conversion of this Note, any shares remaining in the Share Reserve shall be cancelled. The Company [Aim Exploration] shall pay all costs associated with issuing and delivering the shares. The company should at all times reserve a minimum of five times the amount of shares required if the note would be fully converted. The Holder [Adar Bays] may reasonably request increases from time to time to reserve such amounts.
(Note ¶ 12.)
Adar Bays responds that this argument fails for a number of reasons, including: (1)
*704 the share reserve is not charged to Defendant; (2) the shares were placed in the control of Aim Exploration's transfer agent; (3) the shares would only be delivered to Adar Bays if it exercised its conversion right; (4) if the Note is not converted or shares remain after a conversion, the reserve is cancelled and the shares are returned to Aim Exploration; (5) Aim Exploration's argument is premised on § 5-511, which is a statute applicable to the defense of civil usury, not criminal usury; and (6) Aim Exploration does not cite any case law on point to support its argument. (Pl. Opposition at 15.)
On its face, § 5-511 is a statute applicable to the defense of civil usury, not criminal usury as alleged here. The civil defense of usury cannot be asserted by a corporation, see Sabella, 2009 WL 3233703 at *16, and Aim Exploration is a corporation (see Def. Mem. at 3). It is an "open question under New York law[ ] whether a loan is void if it violates New York's criminal usury statute without violating New York's civil usury statute." In re Venture Mortg. Fund, L.P., 282 F.3d 185, 189 (2d Cir. 2002) ; see also Sabella, 2009 WL 3233703 at *28-*29.
In any event, the reservation of shares was not an independent payment to Adar Bays, but merely a mechanism by which to effectuate the share conversion as envisioned by the Note and the SPA. Since the share conversion feature does not render the agreement usurious, neither does the reservation of shares provision.
3. Default Rate
Aim Exploration argues that the default provisions of the Note also render it usurious. (See Def. Mem. at 14-16.) The terms of the Note provide for various "Events of Default," including Aim Exploration's default in the payment of principal or interest on the Note, Aim Exploration's becoming insolvent, and Aim Exploration's failure to deliver to Adar Bays common stock pursuant to the conversion provision. (See Note ¶ 8.) In such "Events of Default," the Note provides that Adar Bays is entitled to consider the Note immediately due and payable and "interest shall accrue at a default interest rate of 24% per annum or, if such rate is usurious or not permitted by current law, then at the highest rate of interest permitted by law." (Id. )
In addition, if Aim Exploration fails to deliver to Adar Bays the common stock pursuant to the conversion provision of the Note within three business days of its receipt of a Notice of Conversion, the Note provides for a penalty of $250 per day the shares are not issued beginning on the fourth day after the conversion notice was delivered, which increases to a penalty of $500 per day beginning on the tenth day. (Id. ) In addition, if Aim Exploration breaches other specific provisions of the Note, then the outstanding principal amounts are to increase by 20% or 50%. (Id. ) Finally, the Note states that if it is not paid at maturity, the outstanding principal due under the Note increases by 10%. (Id. )
According to Aim Exploration, the penalties in the default section of the Note are "disguised interest" that cause the stated default interest rate of 24% to exceed the criminal usury cap depending on the duration of the event of default. (See Def. Mem. at 15.) In opposition, Adar Bays argues that Aim Exploration's argument is foreclosed by a long line of cases which state that usury limits do not apply to interest rates charged only after default. (See Pl. Opposition at 17.)
a. Whether the criminal usury cap applies to defaulted debts
Numerous courts in this District have held that New York's usury laws do not *705 apply to defaulted obligations. See, e.g., Prowley, 2010 WL 1848222 at *4 ("New York usury laws do not apply to defaulted obligations."); In re Vargas Realty Enters., Inc., 440 B.R. 224, 234 (S.D.N.Y. 2010) ("[T]he provisions regulating the maximum rate of interest do not apply to ... interest rates on defaulted obligations."); Bristol Inv. Fund, Inc., v. Carnegie Int'l Corp., 310 F.Supp.2d 556, 562 (S.D.N.Y. 2003) ("[I]t is well established that the usury statutes do not apply to defaulted obligations; see also Manfra, Tordella & Brookes, Inc., v. Bunge, 794 F.2d 61, 63 n.3 (2d Cir. 1986) ("[U]sury laws do not apply to defaulted obligations.").
However, in a recent decision in this District, the Honorable Cathy Seibel questioned this articulation of the law with respect to the criminal usury cap and suggested that "although the issue may ultimately have to be settled by the New York Court of Appeals, I conclude ... that New York's criminal usury cap applies to prevent a creditor from collecting interest above 25% on a defaulted debt." Madden v. Midland Funding, LLC, 237 F.Supp.3d 130, 146 (S.D.N.Y. 2017) ; see also Union Capital LLC, 2017 WL 1406278 at *8 ("Judge Seibel convincingly determined after a lengthy analysis of state and federal cases considering the applicability of the criminal usury statute to default interest rates, the best reading of the cases urges an interpretation that the state criminal usury cap does apply to default interest. Thus, the Court may not enforce a default interest rate that exceeded an overall effective interest rate of 25%." (citation omitted) (emphasis in original)). But see Beaufort Capital Partners LLC, 2017 WL 913791 at *3 (post-Madden decision rejecting criminal usury defense in part because "[t]he defense of usury does not apply where ... the terms of the mortgage and note impose a rate of interest in excess of the statutory maximum only after default or maturity" (internal quotation marks omitted) (emphasis and alteration in original)).
In short, the state of the law regarding whether New York's criminal usury cap applies to defaulted obligations is not entirely settled. However, the issue is not determinative here because, as described below, the Court is not persuaded that the Note's default penalties should be included in the default interest rate calculation.
b. Whether the default penalties are disguised interest
Aim Exploration offers hardly any explanation for why or how the default penalties here constitute "disguised interest," nor does it propose an amount of total interest it believes was charged. Even if post-default obligations are subject to a criminal usury defense, given the standard on a motion to dismiss, Defendant has not shown that the applicable default interest rate exceeds 24%.
If necessary, this Court can account for any potentially unenforceable aspects of the penalties as part of a damages calculation at a later point in these proceedings. See, e.g., Union Capital LLC, 2017 WL 1406278, at *7-*8 (finding that daily penalty provisions of $250 and $500 were unenforceable penalties without including them in the default interest rate calculation); LG Capital Funding, LLC v. Coroware, Inc., No. 16-cv-2266, 2017 WL 3973921, at *3 (E.D.N.Y. Sept. 8, 2017) (declining to award as liquidated damages the daily penalty provisions of the note, which provided for a $250 and $500 penalty per day if the defendant breached the conversion provision).
4. Usurious Intent and the Enforceability of Criminally Usurious Loans
For the reasons stated above, Aim Exploration has not met its heavy burden of *706 showing that the Note is criminally usurious. Thus, it is not necessary for the Court to reach the issues of whether usurious intent can be gleaned from the Note or whether the Note is void as a matter of law.
II. ORDER
For the reasons set forth above, it is hereby ORDERED that the motion ("Motion," Dkt. Nos. 27, 31) of defendant Aim Exploration, Inc. for a judgment on the pleadings and to dismiss the First Amended Complaint of plaintiff Adar Bays, LLC (Dkt. No. 11) pursuant to Federal Rule of Civil Procedure 12(c) is DENIED .
SO ORDERED.