18-3023
*Adar Bays, LLC v. GeneSYSID, Inc. FKA RX Sales, Inc.*

# In the
# United States Court of Appeals
## For the Second Circuit

_____

August Term 2019

(Submitted: February 26, 2020　　Questions Certified: June 11, 2020)

Docket No. 18-3023

_____

ADAR BAYS, LLC

*Plaintiff-Appellee,*

– v. –

GENESYS ID, INC. FKA RX SALES, INC.

*Defendant-Appellant*

_____

B e f o r e:

PARKER, LIVINGSTON, NARDINI, *Circuit Judges.*

_____

Appeal from an order of the United States District Court for the Southern District of New York (Carter, *J.*), granting summary judgment in favor of Adar Bays, LLC, the holder of a Convertible Redeemable Note securing a loan to GeneSYS ID, Inc. The loan was in default and the Defendant made an affirmative defense of usury. The district court held that the Note's interest rate did not violate the New York State criminal usury law, N.Y. Penal Law § 190.40. Because the resolution of this appeal turns on questions of New York law for which no controlling decisions of the New York Court of Appeals exist, we CERTIFY two questions to the Court of Appeals.

_____

KEVIN KEHRLI, Garson, Segal, Steinmetz, Fladgate LLP, New York, NY, *for Plaintiff-Appellee*.

JONATHAN URETSKY, Phillipson & Uretsky, LLP, New York, NY, *for Defendant-Appellant*.

_____

BARRINGTON D. PARKER, *Circuit Judge*:

This appeal arises from an action brought by Adar Bays, LLC, against

GeneSYS ID, Inc., to collect on a Convertible Redeemable Note ("Note")

issued in connection with a loan from Adar Bays to GeneSYS, which had

defaulted. The Note permitted Adar Bays to convert any outstanding loan

balance into GeneSYS common stock at a 35% discount from the stock's

market price. The primary issue presented is whether this conversion

option meant that the Note's interest rate exceeded the 25% cap set by New York's criminal usury law, N.Y. Penal Law § 190.40.

In the court below, GeneSYS moved to dismiss the complaint on the ground that the Note was usurious. Adar Bays cross-moved for summary judgment. The United States District Court for the Southern District of New York (Carter, *J.*) granted Adar Bays' motion, holding that the Note's conversion option did not result in a criminally usurious interest rate.

The first issue presented is whether the Note violates New York's criminal usury law because it contains a conversion option with a 35% discount that, if treated as interest, raises the interest rate above the statutory maximum (25%).  Adar Bays, on the other hand, contends that upon conversion, the transaction becomes an equity investment to which usury laws do not apply. The second issue presented is, if the interest rate does violate § 190.40, whether the Note is void *ab initio*, as it would be if New York's civil usury law, N. Y. Gen. Oblig. Law § 5-511, applied. If the Note is void, GeneSYS would be relieved of its obligation to repay the money it borrowed.

Because the resolution of both issues turns on questions of state law for which no controlling decisions of the New York Court of Appeals exist, we certify two questions to the Court of Appeals. *See* 22 N.Y.C.R.R. § 500.27(a) and 2d Cir. R. 27.2(a). Although the parties did not request certification, we may seek it *nostra sponte* and we do so here. *Corsair Special Situations Fund, L.P. v. Pesiri*, 863 F.3d 176, 182-83 (2d Cir. 2017).[1]

## BACKGROUND

GeneSYS is a publicly held corporation in New York that owns several companies which produce various types of medical supplies. Its shares are traded in the over-the-counter market. In May 2016, GeneSYS borrowed $35,000 from Adar Bays. The transaction was at arm's length and both parties were represented by counsel. The loan was documented by a Securities Purchase Agreement and Convertible Redeemable Note that obligated GeneSYS to repay any outstanding balance by May 2017. The Note contained a stated annual interest rate of 8% as well as significant

---

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, alterations, emphases, footnotes, and citations are omitted.

4

prepayment penalties. The Note also provided that Adar Bays, at its sole discretion, was entitled, at any time after 180 days from the Note's issuance, to convert any or all of the outstanding balance into shares of GeneSYS common stock at a conversion price set at 65% of the lowest trading price of the common stock as reported on the National Quotations Bureau OTCQB exchange market for the twenty prior trading days. The Note also provided that GeneSYS was to instruct its transfer agent to hold in reserve stock amounting to three times the number of shares required if the Note were fully converted to facilitate any conversion by Adar Bays.

In May 2016, the Note was issued and GeneSYS directed Adar Bays to disburse $2,000 for its attorney's fees and to disburse the remaining $33,000 to GeneSYS. Adar Bays complied with those directions and the Note was fully funded. Six months later, in November 2016, Adar Bays submitted a notice to GeneSYS to convert $5,000 of the amount outstanding into common stock. GeneSYS acknowledged receipt of the notice but refused to honor it. In December 2016, Adar Bays sent GeneSYS a notice of

default. To date, GeneSYS has not delivered any shares or repaid any of the outstanding principal or any interest.[2]

Adar Bays sued in February 2017, alleging, essentially, breach of contract. GeneSYS moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(c) on the ground that the Note was void as usurious, and Adar Bays moved for summary judgment on all claims. The district court granted summary judgment in favor of Adar Bays and denied GeneSYS's motion to dismiss. Though immaterial to the issues presented here, the district court also held that the liquidated penalties clause and daily penalties clause in the Note were invalid. This appeal followed.

## DISCUSSION

### I.

N.Y. Penal Law § 190.40 provides that a loan is criminally usurious when the parties knowingly provided for an interest rate of 25% or more.

---

[2] On GeneSYS's 10-Q for the period ending September 30, 2016, the company stated that it had "terminated its transfer agent on September 6, 2016, preventing further toxic conversions and bringing all parties to the table to discuss a satisfactory settlement."

With exceptions not relevant here, a corporation may assert criminal usury as an affirmative defense to efforts to collect on a loan. N.Y. Gen. Oblig. Law § 5-521; *see, e.g., Blue Wolf Capital Fund II, L.P. v. Am. Stevedoring, Inc.*, 105 A.D.3d 178, 182 (N.Y. 1st Dep't 2013).

New York's civil usury laws operate somewhat differently. The civil usury statute prohibits loans at rates exceeding 16% per year. N.Y. Gen. Oblig. Law § 5-501. Corporations cannot assert a civil usury defense. N.Y. Gen. Oblig. Law § 5-5-521. Section 5-511 provides that all contracts "whereupon or whereby there shall be reserved or taken, or secured or agreed to be reserved or taken, any greater sum, or greater value, for the loan or forbearance of any money, goods, or other things in action, than is prescribed in section 5-501, shall be void." There is no parallel provision in the criminal usury law for voiding a loan found to be criminally usurious.

When a note is not usurious on its face, usury is not presumed and the debtor must prove all the elements of usury, including usurious intent. "[A] heavy burden rests upon the party seeking to impeach a transaction for usury." *Gandy Mach. Inc. v. Pogue*, 106 A.D.2d 684, 685 (N.Y. 3d Dep't

7

1984). Moreover, a debtor asserting a defense of usury must establish the elements of usury "by clear and convincing evidence." *Blue Wolf Capital Fund II*, 105 A.D.3d at 183 (citing *Giventer v. Arnow*, 333 N.E.2d 366, 369 (N.Y. 1975)). Finally, usury laws only apply to loans. If there is no loan, "there can be no usury, however unconscionable the contract may be." *Seidel v. 18 E. 17th St. Owners, Inc.*, 598 N.E.2d 7, 11-12 (N.Y. 1992).

GeneSYS principally argues that the 35% discount that applies if Adar Bays elects to convert any outstanding debt into stock violates § 190.40 because that discount rate is the Note's "real" interest rate. This is so, according to GeneSYS, because Adar Bays enjoyed a unilateral right to convert at that rate, which was fixed when the Note was issued and did not fluctuate with market conditions. Thus, for each $1.00 of principal that Adar Bays requests be converted into shares, GeneSYS is required to deliver stock worth $1.35.[3] In other words, GeneSYS argues, a conversion

---

[3] One question which might be fairly asked about this accounting is what value GeneSYS is actually transferring to Adar Bays. The *issuance* of further stock, which GeneSYS may do essentially by corporate fiat, does not cost GeneSYS anything, even though those shares may be worth something if sold. Of course, by issuing and then transferring the requisite stock to satisfy the debt, GeneSYS

option allowing Adar Bays to recover the balance as shares at a fixed 35% discount is interest, separate from the stated 8% rate that applies to cash repayments. More simply: the interest on a cash repayment is 8% per annum, and the "interest" on a 'converted stock repayment' is 35%, the latter, according to GeneSYS, rendering the note usurious under Section 190.40.  GeneSYS also argues that the Court should read § 190.40 *in para materia* with § 5-511 and hold the Note void.

Adar Bays takes the position that the 35% discount is not interest because at the time of contracting, the point at which the usury determination is made, it would be entirely speculative whether Adar Bays

---

may have rational concerns about subsequent sales by Adar Bays flooding the market in its securities and thus perhaps reducing GeneSYS's stock price. But that decline in stock price, if it is a "transfer of value" at all, comes at the expense of GeneSYS's existing shareholders (including Adar Bays if it is unable or unwilling to sell some or all of its newly transferred shares), who are now left holding a less valuable security. GeneSYS thus may be rightly concerned with the perceptions of equity investors as to its appeal as an investment and the impact of those perceptions on its ability to seek capital from equity markets in the future. However, the value of those concerns *to GeneSYS* is only uncertainly related to the "$1.35 in value for every $1 of principal" accounting which GeneSYS posits. Perhaps the value to GeneSYS is irrelevant in the usury analysis, but, if that is true, the possibility that the shares transferred could become worthless due to bankruptcy or other events remains as an obstacle to the neat calculus which GeneSYS puts forth.

would ever exercise its conversion option. Once that speculation is removed—if and when Adar Bays elects to convert some or all of the balance—that transaction becomes an equity investment, which is not subject to the usury laws.[4] *See, e.g., LG Capital Funding, LLC v. Sanomedics Int'l Holdings, Inc.*, No. 508410/2014, 2015 WL 7429581, at *10 (N.Y. Sup. Ct. Nov. 23, 2015).

This is not the first case in our Circuit to present this issue; however, previous cases have not resolved it. *See, e.g., Blue Citi LLC v. 5Barz Int'l Inc.*, No. 18-cv-3044, 2020 WL 1043452 (2d Cir. Mar. 4, 2020); *LG Capital Funding, LLC v. On4 Communications, Inc.*, No. 18-3019, 2020 WL 1074501 (2d Cir. Mar. 6, 2020). The New York courts to have considered this issue have

---

[4] Although not subject to New York's usury laws, such an equity transaction may still be subject to regulation and enforcement actions under federal securities laws. *See, e.g.*, Press Release, Securities and Exchange Commission, *SEC Settles with Rhino Advisors, Thomas Badian* (Feb. 27, 2003), https://www.sec.gov/news/press/2003-26.htm (describing enforcement actions taken by the SEC in a transaction involving a similar note and describing the SEC's concern with such notes).

generally rejected the view that a conversion option with a discounted rate should be treated as interest.[5]

In *Sanomedics*, for example, the court concluded that a convertible option did not make the note in question usurious:

> [U]sury laws apply only to loans or forbearances, not investments. Although the initial transactions were loans, which were clearly not usurious . . . the Securities Purchase Agreement provided that, upon conversion, [Defendant] was selling securities . . . to [Plaintiff] as an "investor." . . . While a loan may not be disguised as an investment as a cover for usury, . . . upon conversion at [P]laintiff's election . . . [Defendant's] debt to [P]laintiff [would] become an investment, upon which [P]laintiff took the risk that the stock could be completely worthless.

2015 WL 7429581 at *10. But the reasoning of other decisions of New York courts complicates this conclusion. In *Blue Wolf Capital Fund II*, for example, the Appellate Division wrote that "[t]o determine whether a transaction is usurious, courts look not to its form but to its substance or real character. If an instrument provides that the creditor will receive additional payment in the event of a contingency beyond the borrower's control, the contingent

---

[5] *See, e.g., Sanomedics*, 2015 WL 7429581, at *10; *AJW Partners, LLC v. Cyberlux Corp.*, No. 603098/07, 2008 WL 4514171, at *5 (N.Y. Sup. Ct. Sept. 19, 2008).

payment constitutes interest within the meaning of the usury statutes." 105 A.D.3d at 183.

The district courts of this Circuit have generally concluded that a conversion option at a discounted rate does not violate usury laws.[6] In *Blue Citi LLC v. 5Barz International Inc.*, for example, the district court noted that usury laws apply only to loans, not to equity investments. 338 F.Supp.3d at 335. "Once a loan's principal is converted to shares, the transaction takes on the character of an equity investment. . . ." *Id*. In *Union Capital, LLC v. Vape Holdings Inc.*, the district court wrote:

> [Defendant] argues that, in considering the effective interest rate, the Court should also include the potential profit [Plaintiff] might reap by converting shares at a 42% discount. The Court disagrees. [Plaintiff] simply held an option to convert shares, and

[6] *See, e.g., EMA Fin., LLC v. Joey New York, Inc.*, No. 17-cv-9706 VSB, 2019 WL 4600863 (S.D.N.Y. Sept. 22, 2019); *LG Capital Funding v. PositiveID Corp.*, No. 17-cv-1297 NGG SJB, 2019 WL 4564882 (E.D.N.Y. Sept. 20, 2019); *EMA Fin., LLC v. AIM Expl., Inc.*, No. 18-cv-145 ER, 2019 WL 689237 (S.D.N.Y. Feb. 19, 2019); *Blue Citi LLC v. 5Barz Int'l Inc.*, 338 F.Supp.3d 326 (S.D.N.Y. 2018); *LG Capital Funding, LLC v. AIM Expl., Inc.*, No. 17-cv-3118 DAB, 2018 WL 4119149 (S.D.N.Y. Aug. 29, 2018); *Adar Bays, LLC v. 5Barz Int'l, Inc.*, No. 16-cv-6231 NRB, 2018 WL 3962831 (S.D.N.Y. Aug. 16, 2018); *LG Capital Funding, LLC v. 5Barz Int'l, Inc.*, 307 F.Supp.3d 84 (E.D.N.Y. 2018); *Adar Bays, LLC v. AIM Expl., Inc.*, 285 F.Supp.3d 698 (S.D.N.Y. 2018); *Union Capital, LLC v. Vape Holdings Inc.*, No. 16-cv-1343 RJS, 2017 WL 1406278 (S.D.N.Y. Mar. 31, 2017); *Beaufort Capital Partners LLC v. Oxysure Sys., Inc.*, No. 16-cv-5176 JPO, 2017 WL 913791 (S.D.N.Y. Mar. 7, 2017).

it could have elected to obtain repayment in cash, which would clearly not have been usurious. Moreover, even if [Plaintiff] chose to convert the loan principal into shares, any potential profit [Plaintiff] might realize would still be dependent on the market price at the time of conversion and so, therefore, would be too uncertain to incorporate into an interest rate calculation. Furthermore, even if the discount rate could be considered[,] a usury defense could no longer be applied against the loan once the Note principal was converted into equity in [Defendant].

2017 WL 1406278 at *5.[7] Despite the number of cases from New York state and federal courts confronting this issue, no definitive resolution has emerged. Because such a resolution hinges on an interpretation of New York law having important public policy implications, with potential applications to many different types of financial transactions, we seek the guidance of the New York Court of Appeals. This case, we believe, frames the dispositive issues.

---

[7] Indeed, as alluded to in *Union Capital*, 2017 WL 1406278 at *12–13, investors in notes of the type at issue in this case may still face the risk that, upon disclosure of the loan or other financial issues faced by the borrower, the market for equity in the borrowing company can become so illiquid that the converting lender cannot find a counterparty for any sales and is left holding the proverbial bag. In that sense, unlike a payment of cash, the lender, even in loans like the one at issue here, takes on additional risk by choosing to convert principal to equity.

Accordingly, we certify the following question to the Court of Appeals: *Whether a stock conversion option that permits a lender, in its sole discretion, to convert any outstanding balance to shares of stock at a fixed discount should be treated as interest for the purpose of determining whether the transaction violates N.Y. Penal Law § 190.40, the criminal usury law.*

## II.

Civil usury is governed by N.Y. Gen. Oblig. Law § 5-501 *et seq.* [8] Section 5-501 provides that no person shall charge, take or receive any money, goods or things in action as interest on the loan of any money, goods or things in action at a rate exceeding 16% per annum. Section 5-511 states that contracts providing for loans with an interest of "any greater sum, or greater value . . . than is prescribed in section 5-501 shall be void."

Criminal usury, on the other hand, is governed by N.Y. Penal Law § 190.40, which provides that a lender is guilty of criminal usury when "he

---

[8] N.Y. Gen. Oblig. Law § 5-521 provides that "[n]o corporation shall hereafter interpose the defense of usury in any action" but provides that this exclusion "shall not apply to any action in which a corporation interposes a defense of criminal usury as described in section 190.40 of the penal law."

knowingly charges, takes or receives any money or other property . . . at a rate exceeding twenty-five per centum per annum." Unlike § 5-511, § 190.40 contains no provision for voiding contracts that violate the provision.

District courts in this Circuit have noted that "[i]t is an open question under New York law whether a criminally usurious loan is void *ab initio* or whether a successful defense based on criminal usury results merely in the cancellation of the interest obligation or in a revised obligation to pay a non-usurious rate." *Adar Bays, LLC v. 5 Barz Int'l, Inc.*, 2018 WL 3962831, at *4; *see also Union Capital*, 2017 WL 1406278, at *8; *Blue Wolf Capital Fund II*, 105 A.D.3d at 182.

GeneSYS, relying on § 5-511, argues that if the conversion discount rate is determined to be interest, then the Note is usurious because it violates § 190.40, and, consequently, is void *ab initio*. Adar Bays takes the position that this result would require reading a provision into § 190.40 that the Legislature chose not to include.

15

There is no authoritative guidance on this issue from the Court of Appeals and the existing case law is unclear.[9] The New York Court of Appeals has, however, in circumstances distinct from this case, recognized that "a borrower may be estopped from interposing a usury defense" when its own, intentional actions resulted in the lending contract being declared void, because otherwise the borrower would "achieve a total windfall" from his deceptive actions. *See Seidel*, 598 N.E.2d at 11. In *Seidel*, the Court of Appeals was confronted with a loan where the borrower was involved in drafting the document and negotiating the interest rate, and the lender relied upon the borrower's representations that the transaction was not usurious. *Id.* Here, GeneSYS, advised by counsel, agreed to the 35% discount rate, executed the Note and pocketed the loan proceeds. When Adar Bays attempted to exercise the conversion option, GeneSYS revealed it had already terminated its transfer agent and refused to deliver any

---

[9] For our part, we have noted that "the consequences to a lender of voiding a usurious loan transaction are harsh," and that New York courts thus "have been reluctant to extend them beyond cases that fall squarely under the statutes." *In re Venture Mortgage Fund, L.P.*, 282 F.3d 185, 189 (2d Cir. 2002) (quoting *Rossi v. Hood (ex rel. Estate of Dane)*, 55 A.D. 2d 224, 225 (N.Y. 3d Dep't 1976)).

shares or repay any of the outstanding debt. Should the Note now be declared void, GeneSYS will walk away with the entirety of the loan—achieving what could be viewed as a "total windfall" at the expense of Adar Bays.

Given these considerations and the lack of statutory authority or precedent from the New York Court of Appeals, we certify the following question to the Court of Appeals: *If the interest charged on a loan is determined to be criminally usurious under N.Y. Penal Law § 190.40, whether the contract is void* ab initio *pursuant to N.Y. Gen. Oblig. Law § 5-511.*

**CERTIFICATION**

Pursuant to the rules of the New York Court of Appeals, "[w]henever it appears to . . . any United States Court of Appeals . . . that determinative questions of New York law are involved in a case pending before that court for which no controlling precedent of the Court of Appeals exists, the court may certify the dispositive questions of law to the Court of Appeals." 22 N.Y.C.R.R. § 500.27(a); *see also* 2d Cir. R. 27.2(a) ("If state law permits, the

court may certify a question of state law to that state's highest court."). We conclude that certification of these two questions is appropriate.

Our decision to certify questions to the Court of Appeals is discretionary, and when exercising that discretion we consider whether: (1) "the New York Court of Appeals has not squarely addressed an issue and other decisions by New York courts are insufficient to predict how the Court of Appeals would resolve it"; (2) "the statute's plain language does not indicate the answer"; (3) "a decision on the merits requires value judgments and important public policy choices that the New York Court of Appeals is better situated than we to make"; and (4) "the questions certified will control the outcome of the case." *See Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 42 (2d Cir. 2010). Each of these factors weighs in favor of certification in this case.

The New York Court of Appeals has not addressed either question certified here, and similar questions have not "been litigated in New York courts often enough that sufficient precedents exist for us to make a determination concerning their proper outcome." *Commodity Futures*

18

*Trading Comm'n v. Walsh*, 618 F.3d 218, 231 (2d Cir. 2010). Neither of the questions is resolved by the text of the relevant statutes. Both questions turn on policy determinations that the Court of Appeals is best suited to make, including the balance of interests of short-term lenders and high-risk debtors. The answers to these questions will have important ramifications for New York's financial community. Finally, the questions certified will control the outcome of the case. *See Penguin Grp. (USA) Inc.*, 609 F.3d at 42. Because these factors weigh in favor of certification, we certify the questions formulated above and restated below.

## CONCLUSION

We hereby certify the following questions to the New York Court of Appeals:

1. *Whether a stock conversion option that permits a lender, in its sole discretion, to convert any outstanding balance to shares of stock at a fixed discount should be treated as interest for the purpose of determining whether the transaction violates N.Y. Penal Law § 190.40, the criminal usury law.*

*2. If the interest charged on a loan is determined to be criminally usurious under N.Y. Penal Law § 190.40, whether the contract is void ab initio pursuant to N.Y. Gen. Oblig. Law § 5-511.*

We invite the Court of Appeals to reformulate these questions as it sees fit or expand them to address any other issues of New York law that would assist this Court in determining whether discounted conversion rates are interest pursuant to N.Y. Penal Law § 190.40 and whether N.Y. Gen. Oblig. Law § 5-511 can be read to void criminally usurious loans.

It is hereby ORDERED that the Clerk of this Court transmit to the Clerk of the New York Court of Appeals this opinion as our certificate, together with a complete set of briefs, appendices, and the record filed in this case by the parties. This panel retains jurisdiction for purposes of resolving this appeal once the New York Court of Appeals has responded to our certification.

## CERTIFICATE

The foregoing is hereby certified to the New York Court of Appeals pursuant to 22 N.Y.C.R.R. § 500.27(a) and 2d Cir. R. 27.2(a), as ordered by the United States Court of Appeals for the Second Circuit.